AMERICAN INTERNATIONAL SPECIALITY LINES INSURANCE COMPANY, Plaintiff,

v.

NATIONAL ASSOCIATION OF BUSINESS OWNERS AND PROFESSIONALS, The United States Of America, David W. Silverman, Lois King, St. Andrews Episcopal Church, Donna Hickman, Doug Gray, Terrell Glenn, Brady Johnson, Dave Johnson, Lynn Mitchell, Caryl Randazzo, Greg Shore, Andy Tyrrell, Cantey Wright, Pedersen & Scott, P.C., William A. Scott, Vincent & Bostic, LLP, Curtis Bostic, Thad Vincent, Sandy Scott, Carol Murphy, P. Brandt Shelbourne, Nutlocker, Inc. d/b/a Warm Hardware, DAR Machine & Metalworks, Inc., Palmetto Pediatrics, Inc., Richard B. MacDonald d/b/a Best Golf Cars, Fidler Corporation d/b/a Mail Boxes etc., Tamara Michelle Truel, Robert Truel, Melissa G. Cole, Michael Cole, Robin Dunbar, Raymond Dunbar, Stanley Scharf, Kent D. McPhail, Barre C. Dumas, Susie M. Nelson, Cynthia Mullinax, W & W Truck & Tractor Co., Inc., Mary B. Gunnells, William A. Gunnells, Tele Tech Corporation, D's Jewlers, Inc., Harvey W. Rumph, Michele Hastings, Francis H. Walpole, Peter Hastings as guardian for Erin Hastings (a minor child), Form–A–Tool, Inc., James E. Musacc-

hia, Dave Loudin, Carol Hightower, Don Sievert, Thomas Wooten, David C. Fleming, Jimmy R. Sullivan, Sr., Roger L. Bowman, Lewis L. Henslee, William J. Price, Troy T. Sweet, David L. Williams, Billy L. Crowe, Curtis Wilburn, Charles Ginther, James K. Bradberry, Harold Stewart, Robert G. Cox, Gary Edens, Douglas Austin, Laurie Lambert, Christine A. Aughtman, New River Health Association, Inc., And Donna M. Wilson, and all other employers, and employees of such employers, similarly situated, Defendants.

National Union Fire Insurance Company of Pittsburgh, PA., Plaintiff,

v.

Charles L. Bradley, Terence E. Rhue, Noel Shaw, Jr., Paul D. Askew, International Workers Guild Health and Welfare Fund, The United States of America, David W. Silverman, Mary B. Gunnells, William A. Gunnells, Tele Tech Corporation, Cynthia Mullinax, and W & W Truck & Tractor Co., Inc., and all other employers and employees of such employers, similarly situated, Defendants.

Nos. 99 CV 1108(ADS)(ARL), 99 CV 1109(ADS)(ARL).

United States District Court, E.D. New York.

March 28, 2003.

D'Amato & Lynch by Ronald H. Alenstein, Esq., New York City, for Plaintiffs American International Speciality Lines Insurance Company and National Union Insurance Company of Pittsburgh, PA.

Granik Silverman Campbell & Hekker by David W. Silverman, Esq., New City, NY, for Defendant David W. Silverman, National Association of Business Owners & Professionals and International Workers' Guild Health and Welfare Fund.

Roslynn R. Mauskopf, United States Attorney by Vincent Lipari, Assistant United States Attorney, Brooklyn, NY, United States Department of Labor, Office of the Solicitor by John J. Campbell, New York City, Dumas & Mitchell, LLC by Barre C. Dumas, Esq., Mobile, AL, for Defendants Barre C. Dumas and Susie Nelson.

Christine A. Aughtman, Lawrenceville, GA, Pro se Defendant.

Kahn Law Firm by Justin S. Kahn, Esq., Charleston, SC, for all other Defendants (the "South Carolina Defendants").

Richardson, Patrick, Westbrook & Brickman, LLC by Christian H. Hartley, Esq., Charleston, SC, for South Carolina Defendants.

No Appearances for Charles L. Bradley, Terence E. Rhue, Noel Shaw, Jr., and Paul D. Askew.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiffs American International Specialty Lines Insurance Company ("AISLIC") and National Union Fire Insurance Company of Pittsburgh, PA. ("National Union") bring separate interpleader actions to resolve multiple and conflicting claims regarding insurance policies that they issued to the defendant National Association of Business Owners & Professionals ("NABOP"). Presently before the Court are two motions, one to approve proposed settlements in the two actions and the second to disqualify or otherwise limit the recommendation of NABOP's independent fiduciary concerning the settlements.

## I. BACKGROUND

Initially, it is helpful to set forth the history leading to the two interpleader actions. On December 15, 1998, the then United States Secretary of Labor, Alexis M. Herman, commenced an action against NABOP, among others, in the United States District Court for the Eastern District of New York, alleging breaches of

fiduciary duty concerning the International Workers' Guild Health and Welfare Trust Fund (the "Fund") in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* *See Herman v. Fidelity Group,* No. 98CV7683 (JM) (E.D.N.Y. filed Dec. 15, 1998).

In *Herman,* the complaint alleges that the Fund was created to provide group health and welfare benefits to the employees of contributing employers; that NABOP acted in various capacities in connection with the Fund, including management, and as a fiduciary and third-party administrator; that the International Workers' Guild ("IWG") was the labor union representing employees of employers participating in the Fund under a collective bargaining agreement with NABOP; and that Fidelity Group, Inc. ("Fidelity") acted as the third-party administrator of the Fund.

The complaint alleges further that during the period 1995 to the present NABOP, IWG, the trustees and the administrator of the Fund, and the officers and the employees of NABOP caused or permitted the improper diversion of assets of the Fund through various schemes, including sham union and association fees paid to IWG and NABOP and improper salaries paid to NABOP officers. As a result of these schemes, the Fund became insolvent causing millions of dollars of health claims to go unpaid.

On December 24, 1998, the Honorable Jacob Mishler froze the assets of NABOP and the other defendants; appointed David W. Silverman ("Silverman") as Independent Fiduciary and Receiver of NABOP, IWG, the Fund and Fidelity; and directed Silverman to develop a plan for the fair adjudication and payment of outstanding claims to participants in the Fund. On January 8, 1999, Judge Mishler amended the December 24, 1998 order adding the following provision:

> Unless otherwise permitted by this Court, all pending actions, whether state and/or federal, against the Fund, its trustees, fiduciaries, participants or beneficiaries are stayed. Excluded from this Order are any actions, whether legal, equitable or administrative in nature, by the Secretary of Labor or any other federal governmental authority and any state or state agency. Any action filed after the filing of this Order would also be stayed pursuant to the All Writs Act, 28 U.S.C § 1651.

*Herman v. Fidelity Group,* No. 98CV7683 (JM) (E.D.N.Y. Jan. 8, 1999). On January 29, 1999, Judge Mishler terminated the Fund as of January 31, 1999 and directed Silverman to notify all participants and contributing employers. Since then, Silverman has entered into a number of stipulations of settlement with various defendants and Judge Mishler has dismissed the actions against those settling defendants. On January 9, 2003, the *Herman* action was reassigned to this Court and remains pending against certain defendants.

## A. *AISLIC v. NABOP,* 99CV1108

On February 26, 1999, AISLIC filed an interpleader action against NABOP, the United States of America, Silverman, Christine A. Aughtman, Barre C. Dumas, Susie Nelson and the South Carolina Defendants to resolve multiple and conflicting claims concerning an insurance policy AISLIC issued to NABOP. The complaint alleges that AISLIC issued an errors and omissions liability insurance policy to NABOP (the "AISLIC Policy"). The AISLIC Policy insured NABOP against any claims of "Wrongful Acts" made against it that arose solely out of the conduct of its business as an association dur-

ing the policy period of March 6, 1998 to March 6, 1999. Wrongful Act is defined as

[A]ny actual or alleged: (a) negligent act, breach of duty, error, omission, misstatement or misleading statement, or; (b) infringement of copyright or trademark, or unauthorized use of title; (c) plagiarism, piracy or misappropriation of ideas, or; (d) the publication or utterance of libel, slander or other defamatory or disparaging material or remark, or; (e) invasion or infringement of the right of privacy.

The AISLIC Policy's limit of liability was $1,000,000 aggregate inclusive of defense costs, charges and expenses.

On July 10, 1998, the limit of liability under the AISLIC Policy was amended as follows:

Item 3. Limit[ ] of Liability: (Including Defense Costs, Charges, and Expenses):

*$3,000,000* Each Wrongful Act or series of continuous, repeated or interrelated Wrongful Acts.

*$3,000,000* Aggregate.

It is further understood and agreed that the above stated Limit[ ] of Liability apply to any claim for: a Wrongful Act which first occurs; or, a series of continuous, repeated or interrelated Wrongful Acts where the first Wrongful Act occurs; on or after July 10, 1998 and before the end of the policy period.

It is further understood and agreed that the Limit[ ] of Liability remain as $1,000,000 per Wrongful Act and $1,000,000 in the Aggregate for any claim for: a Wrongful Act which first occurs; or, a series of continuous repeated or interrelated Wrongful Acts where the first Wrongful Act occurred; before July 10, 1998 and before the end of the policy period.

The complaint also alleges that NABOP made material misrepresentations to AISLIC in procuring the AISLIC Policy and therefore no coverage exists. On February 26, 1999, Judge Mishler approved AISLIC's interpleader bond in the sum of $1,000,000, the purported amount of the AISLIC Policy.

On May 24, 1999, Judge Mishler denied the South Carolina Defendants' motion to dismiss the interpleader complaint for lack of subject matter and personal jurisdiction and to change venue to the District of South Carolina. On June 17, 1999, Judge Mishler enjoined the named defendants and all persons required to interplead their claims, from instituting or prosecuting any proceeding against AISLIC in state or federal court with respect to the AISLIC Policy during the pendency of this action or the *Herman* action.

On March 8, 2000, the South Carolina Defendants moved to lift the stay to allow them to file a motion to dismiss pursuant to Rule 12(b) and for failure to comply with Rule 23(c)(1). They also moved for leave to take depositions of AISLIC representatives pursuant to Rule 30(b)(6). On January 18, 2001, Judge Mishler denied the South Carolina Defendants' motion to lift the stay in order to file a motion to dismiss and to take depositions. In denying that motion, Judge Mishler noted that proceeding with this action would impair the ability of the parties in the *Herman* action to reach a satisfactory resolution of that matter.

On January 29, 2002, AISLIC, NABOP and Eugene Duncan, Yvonne Duncan, Carl Samuels and Dwayne Samuels (collectively, the "NABOP Individuals") and Silverman filed a stipulation of settlement in the 99CV1108 action (the "AISLIC Stipulation"). The NABOP Individuals were officers or directors of NABOP; were insured under the AISLIC Policy; and have been named as defendants in the *Herman* action. The AISLIC Stipulation provides

that AISLIC, NABOP and the NABOP Individuals, after consultation with the United States, have decided "to resolve their dispute as to the Policy's coverage and consequently as to entitlement to the Policy's proceeds in order to avoid the risks, costs and inconvenience of further litigation...."

The relevant terms of the AISLIC Stipulation are: (1) AISLIC agrees to pay $500,000 to Silverman, minus the cost of notice to all named defendants and known potential claimants, for distribution to the participants and other claimants of the AISLIC Policy pursuant to a formula set forth by the Court; (2) NABOP and the NABOP individuals agree to accept AISLIC's $500,000 payment to Silverman as complete satisfaction of AISLIC's obligations under the AISLIC Policy and, upon final judgment, they agree to release AISLIC from any further claims under the AISLIC Policy and consent to AISLIC's discharge from the interpleader action; (4) the AISLIC Stipulation is conditioned on the Court's entry of judgment in the second interpleader action *National Union v. Bradley*, No. 99CV1109 (E.D.N.Y. filed on Feb. 26, 1999); and (5) Silverman, as receiver and Independent Fiduciary of NABOP, releases AISLIC from any claims relating to the AISLIC Policy.

Submitted with the AISLIC Stipulation is a proposed judgment and order of discharge of stakeholder which provides in pertinent part: (a) the AISLIC Stipulation is fair and reasonable; (b) "AISLIC is hereby discharged from any and all liability arising out of, relating to, or in connection with the Policy"; (c) all claims asserted against AISLIC in this proceeding are dismissed with prejudice; and (d) "[a]ll Participants, members of NABOP, parties hereto and all other individuals and entities having notice of the hearing with respect to entry of this judgment are hereby permanently enjoined and barred from instituting or prosecuting any action or proceeding against AISLIC arising out of, relating to, or in connection with the Policy".

On January 29, 2002, Judge Mishler preliminarily approved the AISLIC Stipulation and directed Silverman to serve notice of the stipulation on the named defendants and potential claimants and set a fairness hearing for June 24, 2002. On May 20, 2002, the South Carolina Defendants filed an objection to the AISLIC Stipulation. On May 28, 2002, the case was reassigned to this Court. On June 24, 2002, the Court heard argument at the fairness hearing. After hearing from the South Carolina Defendants, AISLIC and Silverman, the Court instructed the parties to submit additional paper in support of their positions, which they have done.

## B. *National Union v. Bradley*, 99CV1109

On February 26, 1999, National Union filed an interpleader action against Charles L. Bradley ("Bradley"), Terence E. Rhue ("Rhue"), Noel Shaw, Jr. ("Shaw"), Paul D. Askew ("Askew"), the Fund, the United States of America, Silverman, Mary B. Gunnells, William A. Gunnells, Tele Tech Corporation ("Tele Tech"), Cynthia Mullinax ("Mullinax") and W & W Truck and Tractor Co., Inc. ("W & W") to resolve multiple and conflicting claims concerning an insurance policy National Union issued to NABOP.

The complaint alleges that National Union insured NABOP against claims of "Breach of Fiduciary Duty" during the policy period of September 17, 1998 to September 17, 1999 (the "National Union Policy"). Breach of Fiduciary Duty is defined as "the violation or alleged violation of any of the responsibilities, obligations or duties imposed upon fiduciaries by the

Employee Retirement Income Security Act of 1974 or amendments thereto or the common or statutory law of the United States of America or any State or other jurisdiction therein with respect to any Plan/Trust named in Item 1 of the Declarations...." The National Union Policy's limit of liability was $500,000, inclusive of defense costs, charges and expenses.

On February 26, 1999, Judge Mishler approved National Union's interpleader bond in the sum of $500,000, the purported amount of the National Union Policy. On June 17, 1999, Judge Mishler enjoined the named defendants and all persons required to interplead their claims from instituting or prosecuting any proceeding against National Union in state or federal court with respect to the National Union Policy during the pendency of this case and the *Herman* action.

On January 29, 2002, National Union, Bradley, Rhue, Shaw, Askew, the Fund and Silverman filed a stipulation of settlement (the "National Union Stipulation"). Bradley, Rhue, Shaw and Askew were trustees to the Fund. The National Union Stipulation provides that National Union, Bradley, Rhue, Shaw, Askew and the Fund, after consultation with the United States, have decided "to resolve their dispute as to the Policy's coverage and consequently as to entitlement to the Policy's proceeds in order to avoid the risks, costs and inconvenience of further litigation...."

The relevant terms of the Stipulation are: (1) National Union agrees to pay $500,000 to Silverman, minus the cost of notice to all named defendants and known potential claimants, for distribution to the participants and other claimants of the National Union Policy pursuant to a formula set forth by the Court; (2) the Fund and the Trustees agree to accept National Union's $500,000 payment to Silverman as complete satisfaction of National Union's obligations under the National Union Policy and, upon final judgment, release National Union from any further claims under the National Union Policy and consent to National Union's discharge from the interpleader action; (4) the Stipulation is conditioned on the Court's entry of judgment in the first interpleader action *AISLIC v. NABOP*, No. 99CV1108 (E.D.N.Y. filed on Feb. 26, 1999); and (5) Silverman, as receiver and Independent Fiduciary of NABOP, releases National Union from any claims relating to the National Union Policy.

Submitted with the National Union Stipulation is a proposed judgment and order of discharge of stakeholder which provides in pertinent part: (a) the National Union Stipulation is fair and reasonable; (b) "National Union is hereby discharged from any and all liability arising out of, relating to, or in connection with the Policy"; (c) all claims asserted against National Union in this proceeding are dismissed with prejudice; and (d) "[a]ll Participants, members of NABOP, parties hereto and all other individuals and entities having notice of the hearing with respect to entry of this judgment are hereby permanently enjoined and barred from instituting or prosecuting any action or proceeding against National Union arising out of, relating to, or in connection with the Policy".

On January 29, 2002, Judge Mishler preliminarily approved the National Union Stipulation, directed Silverman to serve notice of the stipulation on the named defendants and potential claimants and set a fairness hearing for June 24, 2002. On May 20, 2002, the South Carolina Defendants filed objections to the National Union Stipulation. On May 28, 2002, the case was reassigned to the Honorable Joanna Seybert and then reassigned again to this Court on June 12, 2002. On June 24, 2002,

the Court heard argument at the fairness hearing. After hearing from the South Carolina Defendants, National Union and Silverman, the Court instructed the parties to submit additional paper in support of their positions, which the parties have done.

### C. The Objections to the Stipulations

The South Carolina Defendants raise the following objections to the proposed settlements in the instant actions: (1) the Settlement Notice is inadequate; (2) the actual method of notifying potential claimants of the settlements is inadequate; (3) without discovery, the defendants and claimants have been deprived of a meaningful opportunity to challenge AISLIC's contentions concerning the validity of the AISLIC Policy and to determine the actual coverage limit of liability of the AISLIC Policy; (4) the actions must be dismissed because the plaintiffs have failed to timely move for class certification under Rule 23; (5) the settlements should not be allowed for the reasons set forth in the South Carolina Defendants' motions to lift the stay dated March 6, 2000 and November 9, 2000; (6) the defendant participants were deprived of an opportunity to comment on or object to the proposed consent order; and (7) the proceeds of the National Union Policy should be distributed solely to the South Carolina Defendants because they are the only ones to have commenced an action against the trustees of that policy. The South Carolina Defendants also move to disqualify or otherwise limit Silverman's recommendation concerning the proposed settlements.

The Court will address each objection separately.

## II. DISCUSSION

### A. The Settlement Notice

■ The first objection is that the Settlement Notice was inadequate. This

objection is without merit. "[N]otice is adequate so long as it is reasonably calculated to apprise the parties of the terms of a proposed settlement and the options available in connection with the judicial proceeding." *In re Drexel Burnham Lambert Group Inc.*, 995 F.2d 1138, 1144 (2d Cir.1993) (citing *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir.1982)). The Settlement Notice advised potential claimants of the background of the *Herman* action and the two instant interpleader actions; the terms of the settlement agreements; and the procedures for objecting to the settlement agreements. This information sufficiently apprised the potential claimants of the terms and options regarding the settlement agreements. Accordingly, the Court finds that the Settlement Notice was adequate.

### B. The Method of Service

■ The second objection is that the actual method of notifying potential claimants of the Settlement Notice was inadequate. This objection is also without merit. Silverman published the Settlement Notice in a national publication, USA Today and mailed the notice to each named defendant and all known potential claimants. This method was sufficient. Accordingly, the Court finds that the actual method of notifying potential claimants of the settlement agreements was adequate.

### C. Discovery Concerning the AISLIC Policy

The third objection is that without discovery, the defendants and claimants have been deprived of a meaningful opportunity to challenge AISLIC's contentions concerning the limit of liability and the extent of coverage under the AISLIC Policy. In response, the plaintiffs argue that the set-

tlements are reasonable based on the likelihood that they will be able to retain the entire proceeds of both policies and that the AISLIC Policy limit of liability is $1,000,000. The Court finds this objection has merit.

■ In the first instance, it is helpful to review the purpose of the federal interpleader statute, 28 U.S.C. § 1335. Section 1335 is a remedial device which allows a person holding property or money to compel two or more parties asserting mutually exclusive rights to the fund to join and litigate their respective claims in one action. 4 James WM. Moore Et Al., Moore's Federal Practice ¶ 22.02[1] (3d ed. 2003) ("Moore's Federal Practice"). An action under Section 1335 typically involves two stages: first, the court decides whether the prerequisites of the statute have been met and whether the stakeholder may be relieved from liability; and second, the court actually adjudicates the defendants' adverse claims to the interpleaded fund. *See New York Life Ins. Co. v. Conn. Dev. Auth.,* 700 F.2d 91, 95 (2d Cir.1983). The second stage proceeds like any other action and is ultimately resolved by the entry of a judgment in the claimant's favor as to who is lawfully entitled to the stake. *See 6247 Atlas Corp. v. Marine Ins. Co., Ltd.,* 155 F.R.D. 454, 462 (S.D.N.Y.1994). Where, as here, the plaintiff claims an interest in the stake, she is not discharged after the first stage but rather remains a party with the other claimants and litigates her claim in the second stage. *See Ashton v. Josephine Bay Paul and C. Michael Paul Found.,* 918 F.2d 1065, 1069 (2d Cir.1990) (noting that the plaintiff stakeholder with an interest in the stake litigates with rival claimants in the second stage). *See also* Moore's Federal Practice § 22.03[2][b] ("In a proceeding in the nature of interpleader, the stakeholder claims an interest in the stake .... [she] is

not discharged after the first stage of interpleader. Under either rule or statutory interpleader, the stakeholder remains a party along with the other claimants, and litigates its claim in the second stage.").

Here, it appears that Judge Mishler completed the first stage, that the prerequisites of the interpleader statute have been met, when he denied the South Carolina Defendants' motion to dismiss the complaint for lack of subject matter jurisdiction and personal jurisdiction. *See AISLIC v. NABOP,* No. 99CV1108 (E.D.N.Y. May 24, 1999). However, the second stage, adjudicating the adverse claims, has not been resolved.

■ In evaluating whether the proposed settlements are reasonable, the Court must determine the actual limit of liability under the AISLIC Policy. Before determining this issue, it is fair and proper to allow the South Carolina Defendants—who will be bound by these settlements—limited discovery for the following reasons.

First, the Court is unable to determine the actual limit of liability under the AISLIC Policy for the claims in this action. The July 10, 1998 amendment to the AISLIC Policy increased the limit of liability from $1,000,000 to $3,000,000 for "any claim for: a Wrongful Act which first occurs; or, a series of continuous, repeated or interrelated Wrongful Acts where the first Wrongful Act occurs; on or after July 10, 1998 and before the end of the policy period." The South Carolina Defendants argue that their claims involve a wrongful act that occurred after July 10, 1998 and therefore the $3,000,000 limit of liability applies. Second, neither party has briefed what law governs the interpretation of the AISLIC Policy and its impact on their respective positions. Third, courts generally permit some discovery in an interpleader action where there are adverse claims to an interpleaded fund. *See Reso-*

*lution Trust Corp. v. MacKenzie,* 60 F.3d 972, 973 (2d Cir.1995); *Metropolitan Life Ins. Co. v. Costello,* No. 01–1751, 2002 WL 1751398, at \*3 (E.D.N.Y. July 25, 2002); *Pressman v. Estate of Steinvorth,* 886 F.Supp. 365, 367 (S.D.N.Y.1995). Accordingly, the Court will allow the South Carolina Defendants limited discovery concerning the limit of liability under the AISLIC Policy.

With respect to discovery, the South Carolina Defendants may conduct one deposition of an AISLIC representative; and serve twenty interrogatories and twenty requests for documents on AISLIC. This Court will supervise future discovery. All discovery must be completed by June 6, 2003, with no extensions. On June 20, 2003, the parties are to submit letter briefs concerning the applicable limit of liability under the AISLIC Policy. The letters may not exceed 10 pages. After the Court has determined the limit of liability issue, it will consider the reasonableness of the proposed settlements.

### D. Class Certification

■ The fourth objection is that the actions must be dismissed because the plaintiffs have failed to timely move for class certification under Rule 23. This objection is meritless. The plaintiffs were unable to move for class certification before the proposed settlements because of Judge Mishler's order staying the actions. Accordingly, the plaintiffs have not failed to timely move for class certification. *But see Sanchez v. Turner,* No. 00CV1674, 2002 WL 1343754, at \*3 (S.D.N.Y. Jun 19, 2002) (finding that the plaintiffs abandoned their class claims where they provided no reason for their failure to move for class certification during the more than two years that the case was pending).

### E. The Previous Motions

The fifth objection is that the settlements should not be approved for the reasons set forth in the South Carolina Defendants' motions to lift the stay dated March 6, 2000 and November 9, 2000. Because Judge Misher has already denied those motions, the Court finds this conclusory objection without merit.

### F. Opportunity to Comment on Proposed Consent Order

The sixth objection is that the defendant participants were deprived of an opportunity to comment on or object to the proposed consent order. Again, this objection is without merit and unsupported by any legal authority.

### G. Distribution of the National Union Policy

■ The seventh objection is that the proceeds of the National Union Policy should be distributed solely to the South Carolina Defendants because they are the only ones to have commenced an action against the trustees of that policy. Again, this objection is without merit and unsupported by any legal authority.

### H. The Disqualification Motion

■ The South Carolina Defendants also move to disqualify or otherwise limit Silverman's recommendation concerning the proposed settlements. In support of this motion, they argue that Silverman has a conflict of interest based on his representation of insurance companies within the family of American International Group ("AIG"), which include the plaintiffs. In particular, they argue that Silverman's conflict comes into sharp focus because he has recommended a substantial compromise on the coverage amount which will be paid to the participants under the policy written by his client, AISLIC.

The South Carolina Defendants have presented no basis to disqualify Silverman as a defendant in this case. Silverman is an adverse party to the plaintiffs in the two instant actions. In the final analysis, the Court must approve the proposed settlements, notwithstanding any party's recommendation. Accordingly, the Court denies the disqualification motion.

## III. CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED,** that the Court declines to approve the proposed settlements in the instant actions at this time; and it is further

**ORDERED,** that the South Carolina Defendants will be entitled to limited discovery which will involve the following: (1) one deposition of an AISLIC representative; (2) service of twenty interrogatories on AISLIC; and (3) service of no more than twenty requests for documents on AISLIC; and it is further

**ORDERED,** that discovery must be completed by June 6, 2003; and it is further

**ORDERED,** that on June 20, 2003, the parties are to submit letter briefs, not to exceed 10 pages, concerning the applicable limit of liability under the AISLIC Policy; and it is further

**ORDERED,** that after the Court has decided the limit of liability issue under the AISLIC Policy, it will consider the reasonableness of the proposed settlements; and it is further

**ORDERED,** that the motion to disqualify Silverman is denied.

**SO ORDERED.**