## AMERICAN INTERNATIONAL SPECIALITY LINES INSURANCE COMPANY, Plaintiff,

v.

## NATIONAL ASSOCIATION OF BUSINESS OWNERS AND PROFESSIONALS, The United States of America, David W. Silverman, Lois King, St. Andrews Episcopal Church, Donna Hickman, Doug Gray, Terrell Glenn, Brady Johnson, Dave Johnson, Lynn Mitchell, Caryl Randazzo, Greg Shore, Andy Tyrrell, Cantey Wright, Pedersen & Scott, P.C., William A. Scott, Vincent & Bostic, LLP, Curtis Bostic, Thad Vincent, Sandy Scott, Carol Murphy, P. Brandt Shelbourne, Nutlocker, Inc. d/b/a Warm Hardware, DAR Machine & Metalworks, Inc., Palmetto Pediatrics, Inc., Richard B. MacDonald d/b/a Best Golf Cars, Fidler Corporation d/b/a Mail Boxes etc., Tamara Michelle Truel, Robert Truel, Melissa G. Cole, Michael Cole, Robin Dunbar, Raymond Dunbar, Stanley Scharf, Kent D. McPhail,

Barre C. Dumas, Susie M. Nelson, Cynthia Mullinax, W & W Truck & Tractor Co., Inc., Mary B. Gunnells, William A. Gunnells, Tele Tech Corporation, D's Jewlers, Inc., Harvey W. Rumph, Michele Hastings, Francis H. Walpole, Peter Hastings as Guardian for Erin Hastings (a Minor Child), Form–A–Tool, Inc., James E. Musacchia, Dave Loudin, Carol Hightower, Don Sievert, Thomas Wooten, David C. Fleming, Jimmy R. Sullivan, Sr., Roger L. Bowman, Lewis L. Henslee, William J. Price, Troy T. Sweet, David L. Williams, Billy L. Crowe, Curtis Wilburn, Charles Ginther, James K. Bradberry, Harold Stewart, Robert G. Cox, Gary Edens, Douglas Austin, Laurie Lambert, Christine A. Aughtman, New River Health Association, Inc., and Donna M. Wilson, and all other employers, and employees of such employers, similarly situated, Defendants.

National Union Fire Insurance Company of Pittsburgh, Pa., Plaintiff,

v.

Charles L. Bradley, Terence E. Rhue, Noel Shaw, Jr., Paul D. Askew, International Workers Guild Health and Welfare Fund, The United States Of America, David W. Silverman, Mary B. Gunnells, William A. Gunnells, Tele Tech Corporation, Cynthia Mullinax, and W & W Truck & Tractor Co., Inc., and all other employers and employees of such employers, similarly situated, Defendants.

Nos. 99 CV 1108(ADS)(ARL), 99 CV 1109(ADS)(ARL).

United States District Court, E.D. New York.

June 29, 2004.

D'Amato & Lynch, by Ronald H. Alenstein, Esq., of counsel, New York, N.Y., Attorneys for the Plaintiffs, American International Speciality Lines Insurance Company and National Union Insurance Company of Pittsburgh, PA.

Granik, Silverman, Campbell & Hekker, by David W. Silverman, Esq., of counsel, New City, N.Y., Attorneys for the Defendant, David W. Silverman, National Association of Business Owners & Professionals and International Workers' Guild Health and Welfare Fund.

Roslynn R. Mauskopf, by Vincent Lipari, Assistant United States Attorney, Brooklyn, N.Y., United States Attorney.

United States Department of Labor, Office of the Solicitor, by John J. Campbell, New York, N.Y.

Dumas & Mitchell, LLC, by Barre C. Dumas, Esq., of counsel, Mobile, AL, Attorneys for the Defendants, Barre C. Dumas and Susie Nelson.

Christine A. Aughtman, Lawrenceville, GA, Pro Se.

Kahn Law Firm, by Justin S. Kahn, Esq., of counsel, Charleston, S.C., Attorneys for all other Defendants, (the "South Carolina Defendants").

Richardson, Patrick, Westbrook & Brickman, LLC, by Christian H. Hartley, Esq., of counsel, Charleston, S.C., Attorneys for the South Carolina Defendants.

No Appearances for Charles L. Bradley, Terence E. Rhue, Noel Shaw, Jr., Paul D. Askew.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiffs American International Specialty Lines Insurance Company ("AISLIC") and National Union Fire Insurance Company of Pittsburgh, PA. ("National Union") (collectively, the "plaintiffs") brought separate interpleader actions to resolve multiple and conflicting claims regarding insurance policies that they issued to the defendant National Association of Business Owners & Professionals ("NABOP"). Presently before the Court are letter briefs by the plaintiffs and the South Carolina Defendants concerning the applicable limits of liability under the insurance policy issued by AISLIC to NABOP (the "AISLIC Policy" or the "Policy"). These letter briefs were submitted to the Court

pursuant to the Court's Memorandum of Decision and Order dated March 28, 2003.

## I. BACKGROUND

This Court has previously considered this case, and the recitation of the facts set forth in *Amer. International Speciality Lines Ins. Co. v. Nat'l Assoc. of Business Owners and Professionals, et al.*, 253 F.Supp.2d 468 (E.D.N.Y.2003), is incorporated by reference.

The facts relevant to the instant application are as follows. In February 1998 NABOP applied for a "claims made" policy from AISLIC. On March 6, 1998, AISLIC issued the AISLIC Policy to NABOP in the amount of $1,000,000. NABOP paid AISLIC a premium of $6000 for the AISLIC Policy. This Policy was effective for the period from March 6, 1998 to March 6, 1999. Near the top of the first page of the AISLIC Policy, it is stated in bold print that "THIS IS A CLAIMS MADE POLICY, PLEASE READ CAREFULLY" (emphasis in original).

Significant language in the original AISLIC Policy stated the following:

1. Errors and Omissions

To pay on behalf of the Insured [NABOP] all sums which [NABOP] shall become legally obligated to pay as Damages resulting *from any claim or claims first made* against [NABOP] during the Policy Period for any Wrongful Act of [NABOP] or of any other person for whose actions [NABOP] is legally responsible, but only if such Wrongful Act occurs during or prior to the Policy Period and arises solely out of the conduct of [NABOP's] business as an association.

Policy ¶ 1 (emphasis added). A "Wrongful Act is defined as

[A]ny actual or alleged: (a) negligent act, breach of duty, error, omission, misstatement or misleading statement, or;

(b) infringement of copyright or trademark, or unauthorized use of title; (c) plagiarism, piracy or misappropriation of ideas, or; (d) the publication or utterance of libel, slander or other defamatory or disparaging material or remark, or; (e) invasion or infringement of the right of privacy."

As stated above, the AISLIC Policy's limit of liability was $1,000,000 aggregate inclusive of defense costs, charges and expenses.

Thereafter, on July 10, 1998, for an additional premium of $3,727, Endorsement # 4, entitled "Increased Limits Endorsement" was added to the Policy. Endorsement # 4 states:

Item 3. Limit[ ] of Liability: (Including Defense Costs, Charges, and Expenses):

*$3,000,000* Each Wrongful Act or series of continuous, repeated or interrelated Wrongful Acts.

*$3,000,000* Aggregate.

It is further understood and agreed that the above stated Limit[ ] of Liability apply to any claim for: a Wrongful Act which first occurs; or, a series of continuous, repeated or interrelated Wrongful Acts where the first Wrongful Act occurs; on or after July 10, 1998 and before the end of the policy period.

It is further understood and agreed that the Limit[ ] of Liability remain as $1,000,000 per Wrongful Act and $1,000,000 in the Aggregate for any claim for: a Wrongful Act which first occurs; or, a series of continuous repeated or interrelated Wrongful Acts where the first Wrongful Act occurred; before July 10, 1998 and before the end of the policy period.

Prior to and during the term of the Policy, claims were asserted against NABOP by, among others, the South Carolina Defendants, alleging that NABOP failed to

pay medical benefit claims that were submitted.

As set forth in more detail in *Amer. International Speciality Lines Ins. Co. v. Nat'l Assoc. of Business Owners and Professionals, et al.*, 253 F.Supp.2d 468, on January 29, 2002, AISLIC, NABOP and Eugene Duncan, Yvonne Duncan, Carl Samuels and Dwayne Samuels (collectively, the "NABOP Individuals") and the appointed Independent Fiduciary and Receiver of NABOP David W. Silverman ("Silverman") filed stipulations of settlement in these actions for $500,000 each, for a combined amount of $1,000,000 (the "Settlement"). Also on January 29, 2002, United States District Judge Jacob Mishler preliminarily approved the Settlement, directed Silverman to serve notice of the Settlement on the named defendants and potential claimants and set a fairness hearing for June 24, 2002.

On May 20, 2002, the South Carolina Defendants filed an objection to the Settlement. On May 28, 2002, the case was reassigned to this Court. On June 24, 2002, the Court heard argument at the fairness hearing. The South Carolina Defendants, among other things, argued that without discovery, the defendants and claimants have been deprived of a meaningful opportunity to challenge AISLIC's contentions concerning the validity of the AISLIC Policy and to determine its actual coverage limit of liability.

On March 28, 2003, this Court issued a Memorandum of Decision and Order in which the Court, among other matters, concluded that it could not determine whether the proposed settlements were reasonable until it determined the actual limit of liability under the AISLIC Policy. As such, the Court authorized limited discovery and directed the South Carolina defendants and AISLIC to submit letter briefs concerning the applicable limit of

liability under the AISLIC Policy. These letter briefs are the subject of the instant decision.

## II. DISCUSSION

### A. As to the Applicable Limits of Liability

As stated above, the Court must decide the applicable limits of liability under the AISLIC Policy. Both AISLIC and the South Carolina Defendants agree that a $1,000,000 limit applies to claims made before July 10, 1998, the date that Endorsement # 4 was added to the Policy. However, these parties disagree as to which aggregate limit, $1,000,000 or $3,000,000, applies to claims that were asserted on or after July 10, 1998. AISLIC argues that the $3,000,000 limit only applies to claims which were asserted on or after July 10, 1998 alleging Wrongful Acts that are *not* a series of continuous, repeated or interrelated Wrongful Acts where the first Wrongful Act occurred before July 10, 1998. On the other hand, the South Carolina Defendants contend that *all* claims asserted against NABOP on or after July 10, 1998 are subject to the $3,000,000 limit, regardless of when the underlying Wrongful Act occurred.

In support of their position, the South Carolina Defendants contend, among other things, that (1) Endorsement # 4 impermissibly alters the coverage from a claims-made policy to an occurrence policy; (2) Endorsement # 4 is ambiguous and therefore should be read in their favor; and (3) that extrinsic evidence supports the application of the $3,000,000 limit to all claims asserted on or after July 10, 1998. Conversely, AISLIC contends that the claims asserted on or after July 10, 1998 are subject to a $1,000,000 limit because these claims involve wrongful acts that are continuous, repeated or interrelated to wrong-

ful acts which occurred prior to July 10, 1998.

■ As stated above, the South Carolina Defendants first argue that Endorsement # 4 impermissibly alters the coverage from a claims-made policy to an occurrence policy. A claims made policy protects the holder only from claims made during the policy period, whereas an occurrence policy protects the insured from liability for acts committed during the policy period regardless of when the claim is asserted. *Zunenshine v. Exec. Risk Indemnity, Inc.*, No. 97 Civ. 5525, 1998 WL 483475, at *1 n. 1 (S.D.N.Y. August 17, 1998) (citing *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 538 n. 3, 98 S.Ct. 2923, 57 L.Ed.2d 932 (1978)).

■ While it is true that the nature of an insurance contract may not be changed absent clear intent, *see Uniroyal, Inc. v. Home Ins. Co.*, 707 F.Supp. 1368, 1373 (E.D.N.Y.1988), in the Court's view, Endorsement # 4 does not make such a change to the Policy. There are several types of "claims-made" policies. *See* Ostrager & Newman, *Handbook on Insurance Coverage Disputes* § 4.02[b][4] (12th ed.2004). One type of claims-made policy, also known as a hybrid claims made policy, "is one that requires not only that the claim ... be made and reported to the insurer during the policy period, but also that the claim arise out of wrongful acts that take place after the inception of the policy and during the policy period." *Id.*

A hybrid claims-made policy requires, as here, that "both an incident and a claim [occur] within the specified coverage period." 7 Couch on Insurance § 102:20. "Such a provision eliminates the risk that an insurer, by issuing a claims-made policy, would assume liability arising from incidents that occurred before the policy's effective date, but remained undiscovered or caused no immediate harm." *Hartford*

*Fire Ins. Co. v. California*, 509 U.S. 764, 771, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993). Thus, contrary to the South Carolina Defendants' contention, Endorsement # 4 did not convert the Policy into an occurrence policy. Rather, Endorsement # 4 merely changed the amount of coverage for claims asserted during the policy period alleging a Wrongful Act which first occurs or a series of continuous, repeated or interrelated Wrongful Acts where the first Wrongful Act occurs on or after July 10, 1998 and before March 6, 1999. In adding a date—based restriction in the claims-made policy Endorsement # 4 modified the Policy into a hybrid claims-made policy but did not, as the South Carolina Defendants claim, change the nature of the Policy into an occurrence-based policy.

■ The South Carolina Defendants next argue that Endorsement # 4 is ambiguous, because of its terminology and grammar, and therefore, must be read in their favor. Generally speaking, the language of an insurance policy will be given its plain meaning and there will be no resort to rules of construction unless an ambiguity exists. *Handbook on Insurance Coverage Disputes* § 1.01[a] (citing *United Nat'l Ins. Co. v. Waterfront New York Realty Corp.*, 994 F.2d 105, 108–9 (2d Cir. 1993)). Thus, if provisions are clear and ambiguous, they will be enforced as written. *Village of Sylvan Beach, N.Y. v. Travelers Indemnity Co., et al.*, 55 F.3d 114, 115 (2d Cir.1995) (citations omitted). However, "if the policy language is ambiguous ... the ambiguity must be interpreted in favor of the insured." *Id.* (citing *Marino v. N.Y. Tel. Co.*, 944 F.2d 109, 112 (2d Cir.1991)). "The determination of whether an insurance policy is ambiguous is a matter of law for the court to decide." *Commercial Union Ins. Co. v. Flagship Marine Servs.*, 190 F.3d 26, 33 (2d Cir. 1999).

"A word or phrase is ambiguous when it is capable of more than a 'single meaning 'when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *United States Fire Ins. Co. v. General Reinsurance Corp.*, 949 F.2d 569, 572 (2d Cir.1991) ("As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading.") (citing *Garza v. Marine Transport Lines, Inc.*, 861 F.2d 23, 27 (2d Cir.1988)). Courts "may not disregard clear and provisions which the insurers inserted in [an insurance policy] and the insured accepted...." *Caporino v. Travelers Ins. Co.*, 62 N.Y.2d 234, 239, 476 N.Y.S.2d 519, 521, 465 N.E.2d 26 (1984).

As stated above, Endorsement # 4 states:

> Item 3. Limit[ ] of Liability: (Including Defense Costs, Charges, and Expenses):
> *$3,000,000* Each Wrongful Act or series of continuous, repeated or interrelated Wrongful Acts.
> *$3,000,000* Aggregate.
> It is further understood and agreed that the above stated Limit[ ] of Liability apply to any claim for: a Wrongful Act which first occurs; or, a series of continuous, repeated or interrelated Wrongful Acts where the first Wrongful Act occurs; on or after July 10, 1998 and before the end of the policy period.
> It is further understood and agreed that the Limit[ ] of Liability remain as $1,000,000 per Wrongful Act and $1,000,000 in the Aggregate for any claim for: a Wrongful Act which first occurs; or, a series of continuous, repeated or interrelated Wrongful Acts where the first Wrongful Act occurred;

before July 10, 1998 and before the end of the policy period.

Although the punctuation used in Endorsement # 4 is grammatically incorrect, i.e. the misplaced colons and semi-colons, in the Court's view, it does not render the Endorsement ambiguous as it is not "reasonably susceptible to more than one reading." *United States Fire Ins. Co.*, 949 F.2d at 572. This is the case because "courts will not resort to grammatical niceties or the technicalities of punctuation in the interpretation and construction of an instrument, unless they may be utilized to make plain that which is otherwise obscure." *Hughes, et al. v. Samedan Oil Corp., et al.*, 166 F.2d 871, 873 (10th Cir. 1948) (citations omitted) ("[N]either the rules of grammatical construction, nor any other rule, should be indulged to confuse that is otherwise manifestly plain.").

In the Court's view, the only reasonable interpretation of Endorsement # 4 is that a $1,000,000 aggregate applies to claims asserted against NABOP between July 10, 1998 and March 6, 1999, inclusive, that allege a Wrongful Act which occurred prior to July 10, 1998 or "continuous, repeated or interrelated Wrongful Acts" when the first Wrongful Act occurred prior to July 10, 1998. Further and significantly, a $3,000,000 aggregate applies only to claims asserted against NABOP between July 10, 1998 and March 6, 1999, inclusive, alleging a Wrongful Act which occurred on or after July 10, 1998 or a "continuous, repeated or interrelated Wrongful Acts" when the first Wrongful Act occurred on or after July 10, 1998 and before the end of the policy period.

Moreover, although the Policy fails to define "continuous, repeated or interrelated," in the Court's view, claims asserted by the same person which are legally similar in nature constitute "continuous, repeated or interrelated Wrongful Acts" within the

meaning of the Policy. *But see National Union Fire Ins. Co. v. Ambassador Group, Inc.*, 691 F.Supp. 618, 623 (E.D.N.Y.1988) (in an interpleader action, finding that the claims asserted in four actions did not arise out of the "same or interrelated acts" because they are "legally distinct claims that allege different wrongs to different people."). For example, a claim that was asserted by a particular individual against NABOP between the period of July 10, 1998 to March 6, 1999, inclusive, alleging Wrongful Acts, i.e. the denial of medical benefits, which occurred prior to July 10, 1998 are subject to the $1 million aggregate. Such is the case even if those Wrongful Acts which commenced prior to July 10, 1998 continued past that date. However, the $3,000,000 aggregate applies to claims asserted by a different individual alleging that he/she was wrongfully denied medical benefits beginning on or after July 10, 1998 and prior to March 6, 1999.

■ The South Carolina Defendants' third argument that extrinsic evidence supports the application of the $3,000,000 aggregate to all claims asserted on or after July 10, 1998 is without merit. The Court does not find Endorsement # 4 to be ambiguous and the Court need not consider extrinsic evidence. *See McCostis v. Home Ins. Co. of Indiana*, 31 F.3d 110, 113 (2d Cir.1994) ("When faced with ambiguity in an insurance policy, a reviewing court should consider extrinsic evidence submitted by the parties to assist in determining their actual intent.") (citing Ostrager & Newman, *Handbook on Insurance Coverage Disputes* § 1.03[a], at 10–12 (4th ed.1991)).

Significantly, from all of the evidence before the Court relating to the claims asserted by the South Carolina Defendants against NABOP, it appears that a large percentage of these claims are subject to the $1,000,000 limit. Such is the case because a large percentage of these claims were asserted prior to July 10, 1998 or on or after July 10, 1998 but contained allegations of Wrongful Acts committed prior to that date. Thus, these claims would be subject to the $1,000,000 limit. Furthermore, the Court notes that the remaining actions that were filed on or after July 10, 1998 were either filed in Small Claims Court where the jurisdictional limit is $5,000 or did not specify the dates of the Alleged Wrongful Acts. These are significant facts with respect to the Court's determination of the reasonableness of the settlement.

## B. As to the Reasonableness of the Settlement

As indicated above, the parties have reached a combined settlement in these two cases in the amount of $1,000,000. The Court has evaluated the asserted claims and defenses and all of the circumstances of this case. For the reasons enunciated in the June 24, 2002 fairness hearing and based on the reasoning and conclusions set forth in the instant decision, the Court finds that the combined settlement of $1,000,000 is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir.2000); *see also Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982) (Judicial discretion should be exercised in light of the general policy favoring settlement.).

## III. CONCLUSION

Based on the foregoing interpretation of the AISLIC Policy, it is hereby

**ORDERED,** that a $1,000,000 aggregate applies to claims asserted by each individual South Carolina Defendants against NABOP between March 6, 1998 and July 9, 1998; and it is further

**ORDERED,** that a $1,000,000 aggregate applies to claims asserted by each individual South Carolina Defendant against NA-BOP between July 10, 1998 and March 6, 1999, inclusive, which allege a Wrongful Act which occurred prior to July 10, 1998 or "continuous, repeated or interrelated Wrongful Acts" when the first Wrongful Act occurred prior to July 10, 1998; and it is further

**ORDERED,** that a $3,000,000 aggregate applies to claims asserted by each individual South Carolina Defendant against NA-BOP between July 10, 1998 and March 6, 1999, inclusive, alleging a Wrongful Act which occurred between July 10, 1998 and March 6, 1999, inclusive, or "continuous, repeated or interrelated Wrongful Acts" when the first Wrongful Act occurred between July 10, 1998 and March 6, 1999, inclusive.

**ORDERED,** that the combined Settlement Agreement is approved.

**SO ORDERED.**